UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| C.A. and L.A., by their parents and next friends FRANCISCO AGUINAGA AND HORTENCIA MORENO, | ) ) ) ) | |
| Plaintiffs, | ) ) | 1:06-cv-01736-SEB-DML |
| vs. | ) ) | |
| AMLI AT RIVERBEND, L.P., AMLI MANAGEMENT COMPANY, PPF AMLI TRS, L.L.C., and T-AML RIVERBEND, L.L.C., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER ADDRESSING PENDING MOTIONS**

This lawsuit stems from an accident that occurred on August 11, 2006, when a freestanding electric range tipped over, causing a scalding hot pot of beans on the stove to spill and injure two minors, Plaintiffs C.A. and L.A.[1]  At the time of the incident, these minors and their parents, Plaintiffs Francisco Aguinaga and Hortencia Moreno, were residents of Apartment 1A of the AMLI at Riverbend apartment complex, located at 8610 Malaga Drive in Indianapolis, Indiana, which had been their residence for approximately three months, since May of 2006.  Dep. of Moreno, 21-22, 25-26.

The portion of the Riverbend apartment complex encompassing Apartment 1A was purchased by AMLI Riverbend Crossing on July 13, 1993 and later conveyed to AMLI

---

[1]C.A. and L.A. were four and three years old respectively on August 11, 2006.

Residential Properties, L.P. on February 15, 1994.  Aff. of Sparrow ¶ 4.  Defendant

AMLI Management Company managed this rental property from July 13, 1993 until

September 26, 2006, which includes the time period relevant to this action.  Id. at ¶ 5.

      Plaintiffs brought this action seeking to hold Defendants responsible for the

accident that occurred on August 11, 2006, when the range in Plaintiffs' apartment tipped,

causing injury to the minor Plaintiffs.  The subject range was manufactured by the

Whirlpool Corporation in 1985.[2]  Aff. of McDowell ¶ 6.  This particular appliance had

never been recalled, and no warnings relating to the propensity of the range to present a

tipping hazard were imprinted on or attached to the subject range.  Docket No. 202 (Ex.

D).  Although later models contained warnings expressing the need for the installation of

an "anti-tip device," the giving of this warning did not begin until the late 1980s; thus, no

such warning was included with the model at issue here.  Dep. of McDowell at 41, 50.  At

the time Defendants purchased and ownership was transferred for the portion of the

Riverbend apartment complex containing Apartment 1A, 444 separate apartment units

were included in this sale, and numerous Whirlpool ranges were included as part of this

transaction, specifically the range in use in Apartment 1A on August 11, 2006.  Aff. of

Sparrow ¶ 7.

      As part of a substantial project site renovation in 1998, AMLI at Riverbend

replaced 556 of its freestanding ranges with new Whirlpool ranges.  Pl.'s Response (Exs.

---

     [2]Whirlpool was originally named as a defendant in the present action, but has since been
dismissed.

B, C).  AMLI at Riverbend also replaced at least seven such ranges from 2001 to 2003.

Id. (Ex. B).  Defendants assert that the range involved in the accident at issue here was

installed properly, as directed by the manufacturer.  They further aver that they were not

aware, prior to the August 11, 2006 incident, that the subject stove had any propensity to

tip.  Dep. of Mullen 135.

Defendants also assert that they were not aware that retro-fit anti-tip brackets were

available to anchor the stove, nor were they aware of any incidents or complaints at the

apartment complex relating to a stove tip-over prior to August 11, 2006.  Plaintiffs, by

contrast, assert that Defendants were made aware of the need to remedy the stoves such as

the one in this case based on notices sent by Whirlpool Corporation to AMLI Residential

Properties, L.P., which directed that "anti-tip brackets or devices must be installed on all

freestanding and set-in ranges.  The installation of this safety device is a requirement."

(Exs. 226-1, 226-2, 226-3, 226-4.)

In May 1999, AMLI at Riverbend hired Jonathan Prater, who worked thereafter in

preparing apartments for new tenants as a Maintenance Technician, eventually being

promoted to Assistant Supervisor.  Dep. of Prater 20-25.  As part of his duties, Mr. Prater

was charged with replacing ranges, which included removing old stoves and ordering and

installing new ones.  Dep. of Prater at 16, 24.  Mr. Prater installed approximately ten

ranges while employed at AMLI at Riverbend, during which time he noticed the "tip over

hazard" warnings which read: "a child or adult can tip the range and be killed" and

"connect the anti tip bracket to the rear range foot" on the doors of the freestanding

ranges.  Dep. of Prater at 24-27.  He therefore installed an anti-tip bracket on each of the

replacement ranges.  Id.

The Riverbend complex is not the only apartment complex owned and managed by

Defendants.  From 1995 through 2005, Defendants constructed 13,611 individual

apartments in various locations, including projects in Georgia, Texas, Kansas, Illinois,

and Indiana.  Pl.'s Response (Ex. G).  Defendants currently manage several apartment

communities featuring freestanding ranges of various brands.

### *Discussion*

**I.     *Plaintiffs' Motion to Exclude*[3]**

On November 16, 2009, Plaintiffs filed a Motion to Exclude Portions of the

Testimony of Defendants' Expert Witness, Sandra A. Metzler, D.Sc., seeking the

---

[3]Contained within Plaintiffs' Surreply is a Motion to Strike Defendants' Reply Brief. That motion first contends that the Reply Brief should be stricken because it exceeds the twenty-page limit imposed by Local Rule 7.1(c).  Plaintiffs' contention is unavailing, however, because the brief is, in fact, limited to twenty pages, as the twenty-first page is not briefing at all but rather merely the certificate of service.  Plaintiffs contend, alternatively, that portions of the Reply Brief should be stricken because they raise new arguments not found in Defendants' original brief.  Contrary to Plaintiffs assertions, however, Defendants did not impermissibly raise any new arguments, but instead simply responded to the opposition's arguments, which is entirely proper.  See, e.g. Eagle Corp. v. H2O Industrial Services, Inc., 2005 WL 1429279 (N.D. Ind. Jun. 8, 2005) ("[T]he arguments  . . . that are raised for the first time in the defendant's reply are addressed only because the plaintiff raised the [same issue] in its response.  It is logical that defendant addressed the plaintiff's arguments in its reply.").  For these reasons, Plaintiffs' Motion to Strike shall be denied.

4

exclusion of four of Dr. Sandra Metzler's opinions.[4]  The admissibility of expert

testimony is governed by the framework set out in Federal Rule of Evidence 702 and

Daubert v. Merrell Dow Pharms. Inc. 509 U.S. 579 (1993).  Applying this framework,

courts must undertake:

> a three-step analysis: the witness must be qualified "as an expert by
> knowledge, skill, experience, training, or education"; the expert's reasoning
> or methodology underlying the testimony must be scientifically reliable; and
> the testimony must assist the trier of fact to understand the evidence or
> determine a fact in issue.

Ervin v. Johnson & Johnson, Inc., 492 F.3d 901, 904 (7th Cir. 2007) (quoting Fed.R.Evid.

702); see also Kumhoe Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (extending

the Daubert admissibility framework to expert testimony in the social sciences).  "The

Daubert standard applies to all expert testimony, whether it relates to an area of

traditional scientific competence or whether it is founded on engineering principles or

other technical or specialized expertise."  Smith v. Ford Motor Co., 215 F.3d 713, 719

(7th Cir. 2000) (citing Kumho, 536 U.S. at 141).

 Plaintiffs contend, first, that Dr. Metzler does not possess, indeed she admits a

deficiency of, expertise relating to the following opinion contained in her report: (1) "The

accident of August 11, 2006 . . . was caused by . . . the inattentiveness of their mother,

---

[4]In their Reply Brief, Defendants contend that the affidavits of Richard Bowles and Greg
Ulrich, relied upon by Plaintiffs, are inadmissible because they are not signed under the penalties
of perjury.  Contrary to this assertion, however, our review of the documents reveals that they
were signed under oath before a notary and are therefore admissible under Rule 56(e).  Also
contrary to Defendants' assertion, both affidavits, and the attachments thereto, establish
sufficiently the basis of the affiant's personal knowledge.  Defendants' Motion to Strike these
affidavits is therefore denied.

Ms. Hortencia Moreno."  Rep. of Metzler at 8.  "A court should consider a proposed

expert's full range of practical experience as well as academic or technical training when

determining whether that expert is qualified to render an opinion in a given area."  Smith,

215 F.3d at 718.

In support of Dr. Metzler's qualifications to offer this opinion, Defendants point

only to her resume, which states that she "[c]onduct[s] design and failure analysis of

biomedical and mechanical devices and products"; "[p]erform[s] accident and failure

analysis on mechanical systems"; and "[p]erform[s] human factors analyses for products

and accident."  Although this last area of asserted expertise arguably relates to the

challenged opinion, the "scientific knowledge" contemplated by Daubert "connotes more

than subjective belief or unsupported speculation."  Porter v. Whitehall Labs., Inc., 9 F.3d

607, 613-14 (7th Cir. 1993).  Defendants have offered no evidence of Dr. Metzler's

testing of this nonspecific hypothesis, nor of her educational and experiential background,

demonstrating that her opinion would be helpful to a jury in the way that expert evidence

must be.  Accordingly, this opinion is far too broad and lacks sufficient authentication

based on "the methods and procedures of science," as required by Rule 702, to be

admissible.  Daubert, 509 U.S. at 590.  Plaintiffs' motion to exclude this opinion shall

therefore be granted.

This does not, however, entirely preclude Dr. Metzler's testimony as to possible

human involvement in the accident that is at the heart of this litigation.  Plaintiffs also

seek the exclusion of Dr. Metzler's opinion that Ms. Moreno should be ascribed some

portion of responsibility for failing to "use the lock lever on the oven to prevent the girls from opening and closing the oven door" and for failing to account for the fact that "jarring and vibration of the oven door being opened could potentially move or vibrate the pot on the burner and cause liquid in the pot to splash, or cause the pot to tip and spill." Rep. of Metzler. According to Plaintiffs, this testimony is unreliable because Dr. Metzler admitted in her deposition that the lock lever was specifically designed for use while the stove was being cleaned, not to prevent someone from opening the door, and that she never inspected the stove in question to determine the significance of either the lock lever or the potential consequences of "jarring and vibration." Thus, Plaintiffs attack these opinions as lacking "analytically sound bases." Tuf Racing Products, Inc. v. American Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000).

Notwithstanding the force of these arguments, we find that by and large they go to the *weight* of the evidence Dr. Metzler offers, rather than the admissibility of that evidence. "The trial court's gatekeeper role . . . is not meant to supplant the adversary system, or the role of the jury: Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof, are the traditional and appropriate means of attacking shaky, but admissible evidence." U.S. Automatic Sprinkler, Co. v. Reliable Automatic Sprinkler Co. et al., 2010 WL 1266659, at *3 (S.D. Ind. Mar. 25, 2010) (quoting United States v. Grace, 455 F.Supp.2d 1148, 1153 (D. Mont. 2006)). Therefore, these opinions relating to possible human error as the cause of the accident, which are far more specific than the opinion previously excluded, are admissible

as expert evidence, and Plaintiffs' Motion to exclude these opinions shall be <u>denied</u>.

Finally, Plaintiffs challenge the opinions contained in paragraphs two and three of the "Opinions" section of Dr. Metzler's report, stating that the manufacturer bears the responsibility for the "safety and efficacy of an appliance" and, as a corollary, that Defendants did not bear the responsibility to determine the "ability of [the] appliance to be used safely and effectively, when installed as directed by the manufacturer." Defendants contend that this is an opinion about manufacturer responsibility, which Dr. Metzler is qualified to offer, according to her curriculum vitae.

In our view, however, this opinion is not factual in nature, but rather a legal opinion about the allocation of responsibility and thus liability. "Although an expert's opinion may 'embrace an ultimate issue to be decided by the trier of fact, . . . the issue embraced must be a factual one." <u>Berry v. City of Detroit</u>, 25 F.3d 1342, 1353 (6th Cir. 1994). "It would have been easy enough for the drafters of the Federal Rules of Evidence to have said that a properly qualified expert may opine on the ultimate question of liability. They did not do so." <u>Id.</u>

The opinions contained in paragraphs two and three of Dr. Metzler's report do not offer factual conclusions based on her analysis. Rather, they constitute broad assertions about the assignment of liability and, at best, blur the line between fact and law. At trial in particular, these opinions would likely be more confusing than helpful to a jury; they shall therefore be excluded. <u>See</u> <u>Winters v. Fru-Con, Inc.</u>, 498 F.3d 734, 743 (7th Cir. 2007). Plaintiffs' motion shall thus be <u>granted</u> as to these opinions as well.

8

## II.     *Motions for Summary Judgment*

A.     *Standard of Review*

Summary judgment is appropriate when the record establishes that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  <u>See id.</u> at 255.  However, neither the "mere existence of some alleged factual dispute between the parties," <u>id.</u> at 247, nor the existence of "some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  <u>Michas v. Health Cost Controls of Illinois, Inc.</u>, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex</u>, 477 U.S. at 323.  The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  <u>Id.</u> at 325.

9

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  <u>Waldridge v. Am. Hoechst Corp.</u>, 24 F.3d 918, 920 (7th Cir. 1994).  Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  <u>See</u> <u>Shields Enter., Inc. v. First Chicago Corp.</u>, 975 F.2d 1290, 1294 (7th Cir. 1992); <u>Wolf v. City of Fitchburg</u>, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated.  <u>See</u> <u>Celotex</u>, 477 U.S. at 322; <u>Ziliak v. AstraZeneca LP</u>, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one essential element "necessarily renders all other facts immaterial."  <u>Celotex</u>, 477 U.S. at 323.

Courts are often confronted with cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief.  "In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard."  <u>Kohl v. Ass'n. of Trial Lawyers of Am.</u>, 183 F.R.D. 475 (D. Md.1998). Thus, in determining whether genuine and material factual disputes exist in this case, the Court has considered the parties' respective memoranda and the exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non-movant.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).

B.    *Plaintiffs' Motion for Summary Judgment*

Plaintiffs have moved for summary judgment on Defendants' Affirmative Defense

Number 8, set out in the Answer to Plaintiffs' Second Amended Complaint, in which

Defendants allege:

> the contributory fault of any nonparty who may be identified through future
> discovery, including but not limited to Francisco Aguinaga and Hortencia
> Moreno and Whirlpool Corporation, who were the proximate cause of all or
> part of Plaintiffs' alleged damages, and the alleged damages, if any, should be
> diminished in proportion as the damages are attributable to the fault of the
> nonparties.

Indiana Code § 34-6-2-88 defines a nonparty as "a person who caused or

contributed to cause the alleged injury, death, or damage to property, but who has not

been joined in the action as a defendant."  Although Whirlpool Corporation was

originally a party to the present action, the Court granted its Motion for Summary

Judgment [Docket No. 107] and entered judgment in its favor on January 10, 2008, thus

making it now a nonparty to this case.

In apparent agreement with that ruling, Plaintiffs now maintain that Whirlpool

Corporation's acts were not the proximate cause of any of Plaintiffs' damages because

Whirlpool "did all that they could do to warn of any potential tip hazards of free standing

ranges and to make available a devise that would vitiate any risk of harm . . . By

mounting and participating in an informational awareness campaign and making retro-

fittable anti-tip brackets available, free of charge, Whirlpool removed itself from the

chain of causation."  Pl.'s Br. in Supp. at 5-6.  Though it may be true that Whirlpool

engaged in a far-reaching publicity campaign to warn of the hazards associated with stove tip-overs, the extent of such a campaign is entirely unclear from the facts adduced at this point in the litigation. Plaintiffs have not cited sufficient evidence to demonstrate the form of Whirlpool's informational awareness campaign, nor to explicate the substance of the information Whirlpool imparted to purchasers, such as Defendants.

Numerous material factual issues thus remain as to whether Whirlpool's actions might have proximately caused, or contributed to the causation of, the accident in this case. Accordingly, Defendants are entitled to attempt to prove this affirmative defense at trial, and Plaintiffs' Motion for Summary Judgment must therefore be <u>denied</u>.


C.   *Defendants' Motion for Summary Judgment*

Defendants seek summary judgment on Plaintiffs' Indiana tort law claim, premised on Section 388 of the Restatement (Second) of Torts, which provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

See Dutchmen Mfg, Inc. v. Reynolds, 849 N.E.2d 516 (Ind. 2006).  Plaintiffs contend

that, as a supplier of chattel (the range), Defendants are liable for the physical harm

caused by that chattel.  "A 'chattel' is 'movable or transferable property; personal

property.'" Id. at 519.

Defendants rejoin that they are not "suppliers of chattel" because the range is in

fact a "fixture," or "a thing which originally was a chattel but which has become a part of

the real estate by reason of attachment thereto by one having an interest therein."

Milestone Contractors, L.P. v. Indiana Bell. Tele. Co., 739 N.E.2d 174, 177 (Ind.Ct.App.

2001).  Defendants focus on this distinction and contend that we are required to hold, as

some Indiana courts have previously held in the property law context, that stoves and

ranges contained in rental units are fixtures, not chattels.  Loxas, 170 B.R. at 653; Peed,

52 N.E.2d at 631.

The Indiana Supreme Court has recently addressed this issue, ruling that:

> Section 388 sets out a tort doctrine that places a loss on the party who caused
> it.  The niceties of real estate title–specifically incorporation into
> realty–produce no different result.  A supplier of a chattel is not freed from
> section 388 liability because chattel is incorporated into other chattel.

Dutchmen, 849 N.E.2d at 521 (citing McGlothlin v. M & U Trucking, Inc., 688 N.E.2d

1243, 1245 (Ind. 1997).  The Dutchmen Court made clear that parties such as Defendants

are "'supplier[s]' as that term is used in section 388."  Id.  "Comment c of section 388

defines a 'supplier' as 'any person who for any purpose or in any manner gives

possession of a chattel for another's use . . . . These rules, therefore, apply to sellers,

13

*lessors*, donors, or lenders.'" Id. (emphasis added).  Therefore, we hold that Plaintiffs have asserted an actionable claim under Indiana tort law and Section 388 of the Restatement (Second) of Torts.

However, as Defendants contend, the duty to protect imposed by Section 388 may nonetheless be delimited in the case of a landlord-tenant scenario like that before us under the doctrine of *caveat lessee*.  In other words, although the Dutchmen case makes clear in the present case that Defendants are suppliers of a chattel and thus subject to Section 388, they and Plaintiffs nonetheless remain in a landlord-tenant relationship and are thus subject to the law's specific restrictions for such relationships.

Indiana law relating to the duties landlords owe to tenants is well established. Under the so-called doctrine of *caveat lessee*, the common law does not impose a duty upon a landlord to protect tenants from injuries caused by defective conditions on the property once possession and control of the property has been surrendered to the tenant. Zubrenic v. Dunes Valley Mobile Home Park, Inc., 797 N.E.2d 802, 806 (Ind.Ct.App. 2003), trans. denied.  Thus, in the absence of statute, covenant, fraud or concealment, a landlord who gives a tenant full control and possession of the leased property will not be liable for personal injuries sustained by the tenant.  Pitcock v. Worldwide Recycling, Inc., 582 N.E.2d 412, 414 (Ind.Ct.App. 1991).

It is undisputed that the minor Plaintiffs and their parents exclusively possessed and controlled the subject premises.  The lease between the parties for Apartment 1A at 8610 Malaga Drive stated that Defendants thereby "demise[d] and lease[d]" the premises

14

to Plaintiffs.  Plaintiffs were living in this apartment on the date of the accident; while living there, Plaintiffs were responsible for the electric, gas, phone, and television utilities, as well as for various furnishings contained in the apartment.  Furthermore, although the lease permitted Defendants to enter Apartment 1A for maintenance and other business purposes, unless there was an emergency, proper notice was required prior to such entrances by the landlord.  For these reasons, as a matter of law, we conclude that Plaintiffs maintained control over the premises, see H.S. Olds, III v. Noel, 857 N.E.2d 1041 (Ind.Ct.App. 2006), thereby invoking the doctrine of *caveat lessee*.

This venerable doctrine, however, does not necessarily excuse Defendants' potential liability, since Indiana law recognizes five exceptions to this general rule: (1) a landlord's assumption of a duty on behalf of a tenant, Vandenbosch v. Daily, 785 N.E.2d 666, 669 (Ind.Ct.App. 2003); (2) a landlord's negligent repair of a defect after expressly agreeing to repair the defect, Houin v. Burger by Burger, 590 N.E.693, 597 (Ind.Ct.App. 1992); (3) injuries caused by defects in an area of the premises over which the landlord retains control, Hodge v. Nor-Cen, Inc., 527 N.E.2d 1157, 1160 (Ind.Ct.App. 1988), reh'g denied, trans. denied; (4) a landlord's failure to repair or to provide a warning about a latent defect of which the landlord had actual knowledge, id.; and (5) injuries caused by a landlord's negligence that arises from the violation of a duty imposed by statute or ordinance.  Id.  We examine each of these potential exceptions below:

1.      Assumption of Duty

A duty may be imposed upon one, who, by affirmative conduct or agreement, assumes to act for another.  Vertucci v. NHP Mgmt. Co., 701 N.E.2d 604, 607 (Ind.Ct.App. 1998).  The specific instances in which landlords are held to have assumed such a duty are specific in nature and relate to conduct undertaken by the landlord to protect the tenant, such as the installation of an emergency ladder, Vandenbosch, 785 N.E.2d at 669, or the assurance of a tenant that a common area was safe and protected. Vertucci, 701 N.E.2d at 608.  Defendants here took no such action to remedy the stove defect; they did not attempt to repair the stove, nor did they provide any warnings or assurances as to the safety or proper use of the stove.  Defendants, therefore, assumed no specific duty to ensure Plaintiffs' safety.  Plaintiffs do not dispute this.  Accordingly, the first exception to *caveat lessee* does not apply.


2.      Express Agreement to Repair

Plaintiffs likewise do not contend that this exception applies, nor is there any evidence that Defendants agreed to remedy or actually attempted to repair the defective condition of the subject range.  From the time Plaintiffs moved into Apartment 1A until the time of the accident, no related problems occurred with the range, and Plaintiffs never requested that any maintenance or repair measures be undertaken in relation to the range. Thus, this exception is also inapplicable.


3.      Common Area

16

Furthermore, it is undisputed and clear from the facts that the accident and resulting injuries that are the subject of this case occurred within Apartment 1A and not in any common area, nor in any area over which Defendants maintained control. This exception to the general rule of *caveat lessee* is therefore also inapplicable.

4.  Violation of Statute

The unjustified violation of a duty prescribed by statute or ordinance constitutes negligence per se if the statute is intended to protect the class of persons in which the plaintiff is included and against the risk of the type of harm which has occurred as a result of its violation. Ray v. Goldsmith, 400 N.E.2d 176 (Ind.Ct.App. 1980). No statutes or ordinances deal specifically with the issue of stove tip-over at the center of this litigation, nor do any statutes state that stoves must contain anti-tip brackets. Thus, no statutes or ordinances specifically protect against the risk and harm associated with range tipping, and this exception also does not apply to the facts of this case.

5.  Actual Knowledge

A landlord may also be subject to liability if it was aware of a latent defect on the premises but failed to warn of or remedy that defect. Hodge, 527 N.E.2d at 1160. Actual knowledge of the defect must exist for such a duty to arise to warn; thus, no duty arises if all that can be shown is that the landlord should have known of the problem. Dickison v. Hargitt, 611 N.E.2d 691, 695 (Ind.Ct.App. 1993). According to Defendants, no evidence

17

in the record demonstrates actual knowledge on their part of the tip-over hazard, thus precluding the application of this exception.

As Plaintiffs hasten to point out, however, recently disclosed purchase orders and financing statements sent from Whirlpool Corporation to AMLI Residential Properties, L.P., which is not a defendant in this litigation, stated that "anti-tip brackets or devices must be installed on all freestanding and set-in ranges.  The installation of this safety device is a requirement."  (Exs. 226-1, 226-2, 226-3, 226-4.)  Given these documents, Plaintiffs may be able to show at trial that AMLI Residential Properties, L.P. had actual knowledge of a latent defect in the subject range.

Moreover, if Plaintiffs can establish such actual knowledge at trial, they may be able to show that this knowledge of AMLI Residential Properties, L.P. is attributable also to one or more Defendants.  It is possible, under Indiana law, for knowledge on the part of directors or officers of a corporation to be imputed to a corporate entity.  See Seymour Improvement Co. v. Viking Sprinkler Co., 161 N.E. 389 (Ind.Ct.App. 1928); see also Ind. Code § 23-18-3-2(2) ("Notice to a member relating to the business affairs of the limited liability company . . . is notice to the limited liability company.").

As the evidence before the Court reveals, from April 17, 2006 to September 28, 2006, Defendant AMLI at Riverbend L.P. was owned jointly by Defendant PPF AMLI TRS LLC, as 40 percent owner and general partner, and Defendant T-AML Riverbend LLC, as 60 percent owner and limited partner.  PPF AMLI TRS LLC is owned entirely by one member, AMLI Residential Properties, L.P.  Moreover, as of August 2006,

18

Defendant AMLI Management Company was owned almost entirely by AMLI
Residential Properties, L.P.  (Ex. A to Pl.'s Supp.)  Because of this corporate relationship,
knowledge held by AMLI Residential Properties L.P. potentially may be imputed to at
least one of the named Defendants.

Defendants do not respond directly to Plaintiffs' contention that knowledge may
be imputed to them by virtue of corporate affiliation and LLC membership, but they do
contend that the testimony of Dale Abraham and other evidence in the record exculpates
them.  Abraham, who filled various positions with Defendants at different times,
including Renovation Coordinator and Vice-President of Service Training, was the
employee with primary responsibility for the replacement and repair of appliances such as
stoves.  Abraham testified that he did "not know positively that [the unrenovated ranges]
did or did not have the tip brackets on there because I just didn't know that.  It wasn't
something I checked physically."  Dep. of Abraham at 101.  He also testified that
Defendants were aware of the need for tip brackets only with respect to specific ranges
"that Whirlpool said needed tip brackets."  Id. at 97.

Defendants also stress that the subject range contained no warnings relating to the
use of an anti-tip device and that, as of August 11, 2006, they were not aware that such
safety devices were available for the subject range.  Dep. of McDowell at 41; Dep. of
Mullen at 135.  According to Defendants, Abraham's testimony, along with numerous
other documents in the record, demonstrate that Defendants were never specifically aware
of any such defect in the subject range.

19

Here, both parties have presented strong evidence.  Plaintiffs have demonstrated the possibility that AMLI Residential Properties, L.P. had actual knowledge of the potential hazard caused by the range in Plaintiffs' apartment, which knowledge may be imputed to Defendants.  Defendants, on the other hand, have adduced evidence to show that they did not, in fact, know of any latent defect.  This represents a material factual dispute precluding summary judgment.  Because genuine doubts remain and a reasonable fact-finder could find for either party, summary judgment is inappropriate.  See Shields Enter., Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992).

C.      *Punitive Damages*

Defendants also seek summary judgment in their favor on Plaintiffs' claim for punitive damages.  Punitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with "malice, fraud, gross negligence, or oppressiveness, which is not the result of mistake of law or fact, honest error in judgment, or overzealousness, mere negligence or other human failing." Erie Insurance Co. V. Hickman by Smith, 622 N.E.2d 515, 529 (Ind. 1993).  As with the remainder of Plaintiffs' claim, the resolution of whether Defendants' conduct was marked by fraud or gross negligence depends upon many disputed and unresolved issues of fact, though we concede that at this point no such evidence has been revealed to exist.  Therefore, Defendants' Motion for Summary Judgment shall be denied.

20

### III.     Conclusion

For the reasons detailed in this entry, Plaintiffs' Motion to Exclude [Docket No. 203], is <u>GRANTED</u> in part and <u>DENIED</u> in part; Plaintiffs' Motion for Summary Judgment [Docket No. 205] is <u>DENIED</u>; and Defendants' Motion for Summary Judgment [Docket No. 201] is <u>DENIED</u>.  The parties are directed to undertake final trial preparations and to schedule a conference with Magistrate Judge Lynch to facilitate the process of trial readiness.  The Clerk is directed to assign this matter for jury trial at the earliest available and practical date.

IT IS SO ORDERED.


Date: _____08/20/2010_____


_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Kevin Edward Deville
THE LAW OFFICE OF STANLEY KAHN
kdeville@stanleykahn.com

John D. Hocutt
NALL & MILLER, LLP
Suite 1500, North Tower
235 Peachtree Street, N.E.
Atlanta, GA 30303

Stanley  Kahn
THE LAW OFFICES OF STANLEY KAHN
kahn@iquest.net

Wayne C. Kreuscher
BARNES & THORNBURG LLP
wayne.kreuscher@btlaw.com

George R. Neuhauser
NALL & MILLER, LLP
gneuhauser@nallmiller.com

Adriane Y. Sammons
NALL & MILLER, LLP
asammons@nallmiller.com

Michael  Wroblewski
KIGHTLINGER & GRAY
mwroblewski@k-glaw.com

D. Bryce Zoeller
KIGHTLINGER & GRAY
bzoeller@k-glaw.com